**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CELINA MUNIZ, et al., | 1:19-cv-0233-LJO-JLT |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CHRISTIAN PFEIFFER, et al., | **(ECF NO. 13)** |
| Defendants. | |

## I. <u>INTRODUCTION</u>

Plaintiff Celina Muniz brings this lawsuit raising federal and state law claims for the death of her son, Daniel Muniz, while he was incarcerated at Kern Valley State Prison ("KVSP"). First Amended Complaint, ECF No. 10 ¶¶ 2, 5. Ms. Muniz initiated this action individually and as the successor-in-interest of Mr. Muniz's estate (collectively "Plaintiffs"). ECF No. 10 ¶ 2. On around March 24, 2018, Mr. Muniz was attacked by his cellmate and later died from his injuries. *Id.* ¶¶ 20-22. Plaintiffs raise claims against the Warden of KVSP, Christian Pfeiffer, individually and in his official capacity, and against Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Ralph Diaz in his official capacity (collectively "Defendants"). ECF No. 10, ¶¶ 6-7.[1]

In the First Amended Complaint ("FAC"), Plaintiffs assert five causes of action. ECF No. 10.

---

[1] Although not identified in the caption in the First Amended Complaint, Plaintiffs also purport to sue unknown CDCR officers in their individual and official capacities (the "Doe Defendants"). ECF No. 10 ¶ 8.

They bring claims under 42 U.S.C. § 1983 for violation of constitutional rights and supervisory liability under the same. ECF No. 10, ¶¶ 57-69, 70-77. They also allege violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. *Id.* ¶¶ 78-88. Next, Plaintiffs allege violations of California Government Code § 845.6 for failure to summon medical treatment for Mr. Muniz and for failure to provide him access to special housing. ECF No. 10 ¶¶ 89-92. Lastly, Plaintiffs bring a negligence and wrongful death claim. *Id.* ¶¶ 93-99.

Under review is Defendants' motion to dismiss the FAC. ECF No. 13. The Court has determined that a decision on the motion is appropriate on the papers under Local Rule 230(g). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## II. <u>BACKGROUND</u>[2]

At approximately 6:30 a.m. on March 24, 2018, while prison officers performed security checks of Facility C in KVSP, they found Mr. Muniz unresponsive in his cell. ECF No. 10 ¶ 20. The officers sounded the alarm and removed Mr. Muniz's cellmate, Toribio Mendoza, from the cell. *Id.* ¶ 21. Mr. Muniz was transported to an outside hospital for treatment of serious head injuries resulting from blunt trauma to the head. *Id.* ¶¶ 21-22. Mr. Muniz underwent brain surgery at Kern Medical Center, and on April 21 he was transferred to Vibra Medical Center. *Id.* ¶ 22. On June 1, 2018 he died from respiratory complications due to the brain injury. *Id.*

*Mr. Muniz's cooperation with a criminal investigation*

Prior to his incarceration at KVSP, Mr. Muniz had cooperated in a criminal investigation. *Id.* ¶ 23. Plaintiffs allege that Warden Pfeiffer, correctional officers and staff knew or should have known that Mr. Muniz was at risk due to his cooperation. *Id.*

*Learning disability*

---

[2] Unless otherwise noted, the facts are taken from the FAC, ECF No. 10. For purposes of Defendants' motion to dismiss, all alleged material facts are construed in the light most favorable to the Plaintiffs. *Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

Mr. Muniz was diagnosed with a mental illness and disability characterized by being a "slow learner" and having "difficulty reading, writing and comprehending simple orders." *Id.* ¶ 24. These mental impairments limited his mental or physical health condition. *Id.* Plaintiffs allege that Mr. Muniz was eligible for certain medical and mental health care services offered to inmates in a state prison because of his condition. *Id.*

*Mr. Muniz complained of threats made by his cellmate*

Days and weeks before the attack, Mr. Muniz had complained to KVSP staff and correctional officers of threats of violence made by his cellmate, Mr. Mendoza. *Id.* ¶ 28. Plaintiffs allege that KVSP's correctional officers and supervisors ignored Mr. Muniz's complaints and failed to remove him from the cell. *Id.* ¶ 34.

*"Out time" and prior attacks by cellmates*

Plaintiffs claim that Warden Pfeiffer, CDCR staff, and the Doe Defendants failed to adopt the practice of alternating the "Out Time" of inmates knowing that Mr. Muniz faced a risk of violence. *Id.* ¶ 25. The FAC does not elaborate on the meaning of "Out Time." *See id.*

Without providing particular details of the attacks, Plaintiffs reference prior attacks on Mr. Muniz by former cellmates. *Id.* ¶ 48.

*Video surveillance*

Unidentified corrections officers, the Doe Defendants, were assigned to monitor the video feeds captured inside housing units. *Id.* ¶ 29. Warden Pfeiffer and KVSP staff knew that materials from equipment and machinery located at KVSP had been removed and hidden by inmates to use as weapons. *Id.* ¶ 27. Plaintiffs allege that the video recording of Facility C shows that the suspect inmates engaged in suspicious activity that should have triggered intervention by prison officers. *Id.* ¶ 33. Plaintiffs also allege that the video recordings from Facility C on March 23 to March 24, 2018 show that Mr. Mendoza had begun planning the attack on Mr. Muniz. *Id.* ¶ 32. During the entire time that the criminal acts occurred "no correction officer enter[ed] the Unit [Facility C] or cell." *Id.* ¶ 33.

*Harm*

Ms. Muniz "has suffered loss of love and society" from the death of her son. *Id.* ¶ 44. Plaintiffs allege that they suffered serious and permanent injuries and are entitled to damages, penalties, costs, and attorney's fees as set forth under the ADA.

## III. <u>STANDARD OF DECISION</u>

### A. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice

and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. <u>ANALYSIS</u>

In Defendants' motion to dismiss, they argue that Causes of Action One, Two, and Three should be dismissed on the following grounds:

> (1) Plaintiffs fail to state an Eighth Amendment claim against Warden Pfeiffer for deliberate indifference to decedent Muniz's welfare or medical care; (2) Warden Pfeiffer is entitled to qualified immunity as to the Eighth Amendment deliberate indifference claim based on a failure to use surveillance video; (3) Plaintiffs have improperly asserted multiple federal claims under one cause of action; (4) Plaintiff Celine [sic] Muniz has failed to allege a familial relationship protected by the Fourteenth Amendment; and (5) Plaintiffs fail to allege sufficient facts to support an ADA / RA claim for monetary relief.

First, the Court analyzes the Section 1983 claims—separately discussing the claims of individual liability and supervisory liability. The remaining claims are discussed in the order they are brought.

### A. <u>Section 1983 Claims</u>

#### 1. Liability of Individual Defendants

##### a. No challenge to claims against Doe Defendants

*Section 1983 liability against Doe Defendants (First Cause of Action)*

Under the First Cause of Action, Plaintiffs assert the Section 1983 claim against the Doe Defendants—the unknown prison officers—in their individual capacities. The Defendants' motion to dismiss, on behalf of Defendants Warden Pfeiffer and Secretary Diaz, does not seek dismissal of the this claim against the Doe Defendants. Accordingly, the Court does not address whether the claims against the Doe Defendants should be dismissed under Rule 12(b)(6).

##### b. Multiple constitutional claims under one cause of action

*FAC is not defective for asserting multiple claims of constitutional violations under one cause of action.*

Defendants argue that Plaintiffs improperly asserted all three constitutional violations (First, Eighth, and Fourteenth Amendments) under the first cause of action. Defendants rely on an unpublished case from this Court, *Fernandez v. N. Kern State Prison*, No. 1:16-CV-1612 AWI JLT, 2016 WL 7324708, at *4 (E.D. Cal. Dec. 16, 2016), for the proposition that it is generally improper to allege different violations of different constitutional rights under a single claim for relief. Although commingling various constitutional claims in one cause of action may not constitute a best practice, it does not by itself entitle the defending party to a dismissal. Rule 8(b) is still the Court's guidepost: a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Court therefore rejects Defendants' argument that the Section 1983 claims should be dismissed merely because they allege multiple constitutional violations under a single cause of action.

### c. Eighth Amendment

Plaintiffs allege Eighth Amendment violations under two theories: failure to protect from harm and deliberate indifference to Mr. Muniz's medical needs. Plaintiffs' Oppo. to Mtn. to Dismiss, ECF No. 19-1, at 7. Although these theories have separate analytical frameworks, Plaintiffs assert them under the same cause of action. *See* ECF No. 10 ¶¶ 57-69.

> All . . . defendants . . . deprived DANIEL MUNIZ of the right to be free from cruel and unusual punishment . . . by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical or mental health care for a serious, but treatable, medical or mental health condition, and by subjecting him, or through their reckless disregard, allowing others to subject him to serious bodily injury and death.

ECF No. 10 ¶ 58. The Court analyzes the failure to protect claim and the deliberate indifference to medical needs separately. Before addressing these claims, the Court dismisses the claims against Warden Pfeiffer as an individual because Plaintiffs fail to allege that he personally participated in the violations.

**i. Failure to Protect from Harm**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A prison official acts with deliberate indifference only if she knows of and disregards an excessive risk to inmate health and safety. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials have an affirmative duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 832. A prison official's failure to protect an inmate from attacks by other inmates violates the Eighth Amendment only when two elements are met: (1) the objective element, which requires a prisoner to show that the complained of conditions posed a "substantial risk of serious harm," and (2) the subjective element, which requires a prisoner to show that the defendant was deliberately indifferent to that risk. *Id.* at 834.

Under the objective prong for a failure to protect claim, a plaintiff must show that he was placed into conditions that posed a substantial risk of serious harm. *Id.*

The subjective prong requires "more than ordinary lack of due care for the prisoner's interest or safety." *Id.* at 835. To show deliberate indifference, the plaintiff must show that the official knew of and disregarded an excessive risk to inmate safety. *Id.* at 837. The official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must actually draw that inference. *Id.* However, the official need not have intended harm to befall the inmate, rather it is enough if the official acted or failed to act despite his knowledge of a substantial risk of harm. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).

The plaintiff may rely on circumstantial evidence to prove the defendant's knowledge of the risk. *Id.* at 842. The sheer obviousness of the risk may be sufficient to establish knowledge. *Id.* Negligence and gross negligence are not enough to constitute an Eighth Amendment violation. *Id.* at 835.

Defendants argue that Plaintiffs failed to plead the subjective prong of the deliberate indifference

claim with respect to Warden Pfeiffer. ECF No. 13-1, at 4. Defendants also contend that Plaintiffs failed to allege that Warden Pfeiffer was personally aware that Mr. Muniz was in substantial danger. *Id.* Next, Defendants argue that the FAC does not allege that Warden Pfeiffer ever interacted with Mr. Muniz, that Warden Pfeiffer was personally aware that Mr. Muniz had complained to CDCR officers about threats by his cellmate, or that Warden Pfeiffer was responsible for making medical or mental health housing decisions. *Id.* Defendants contend the FAC merely states that Mr. Muniz complained to unidentified members of Warden Pfeiffer's staff about threats by his cellmate. FAC; ECF No. 10 ¶ 28.

With respect to Warden Pfeiffer's alleged direct, non-supervisory role, *i.e.* monitoring the cell or responding to the attack, Plaintiffs fail to state a plausible claim for relief. Liability under Section 1983 only arises when a plaintiff can show that the defendant personally participated in the constitutional violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Section 1983 claim against Warden Pfeiffer in his individual capacity fails to allege that he personally participated in the wrongful conduct. *See* ECF No. 10 ¶¶ 57-69. Plaintiffs have not alleged that Warden Pfeiffer had personal knowledge that Mr. Muniz complained of being threatened by Mr. Mendoza. Similarly, Plaintiffs do not allege that Warden Pfeiffer was personally tasked with monitoring the surveillance video or that he watched it in the time leading up to—or during—the attack. Other than the claim that Warden Pfeiffer failed to properly train or supervise KVSP staff—which the Court addresses below—Plaintiffs do not allege the Warden Pfeiffer personally acted to cause the alleged violations. Accordingly, the Court dismisses with leave to amend the claim against Warden Pfeiffer as an individual under the First Cause of Action.[3]

### ii. Deliberate Indifference to Medical Needs

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show deliberate indifference to serious medical needs. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

---

[3] The First Cause of Action does not apply to Secretary Diaz, because he is not being sued in his individual capacity. *See* ECF No. 10, at 18.

2006). The test for demonstrating deliberate indifference for failure to provide medical care to an inmate is in two parts. *Id.* First, a plaintiff "must show the serious medical need by demonstrating that a failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* Second, a plaintiff must show that the defendant's response to the need was deliberately indifferent. *Id.* A defendant's conduct or inaction is deliberately indifferent when the plaintiff can show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*

*Failure to provide medical care post-attack insufficiently alleged*

First, to the extent that Plaintiffs' deliberate indifference to medical needs claim relies on Warden Pfeiffer and CDCR staff failing to summon medical help after Mr. Muniz was attacked, the allegations are insufficient to state a plausible claim for relief.

Even when viewing the facts in the light most favorable to Plaintiffs, the FAC does not allege a deliberate delay or failure to provide medical assistance once Defendants learned that Mr. Muniz was unresponsive in his cell. To the contrary, the FAC itself alleges that once CDCR officers discovered that Mr. Muniz was unresponsive, they immediately sounded an alarm and transported Mr. Muniz to an outside hospital. ECF No. 10 ¶ 21. The FAC fails to otherwise allege that Defendants failed to provide immediate medical assistance. Therefore, Plaintiffs do not set forth the necessary facts to conclude that Defendants' conduct was deliberately indifferent. To the extent that Plaintiffs' claim asserts deliberate indifference to medical needs after Defendants discovered Mr. Muniz to be unresponsive, the FAC is dismissed with leave to amend.

*Failing to provide mental health services or housing*

Next, Plaintiffs claim that Defendants violated his constitutional rights by failing to provide him mental health services and special housing for his learning disability. Plaintiffs allege that Defendants knew of or should have known that Mr. Muniz had a mental disability and was vulnerable to injury. ECF No. 10 ¶¶ 59-60. Plaintiffs claim that Defendants "had a duty to provide [Mr. Muniz] reasonable

security and safe, appropriate housing and monitoring to accommodate his mental disability and his vulnerability to abuse . . . by other inmates." *Id.* ¶ 59. Plaintiffs assert that Mr. Muniz was entitled to mental health services in prison and to separate housing accommodations in vague terms. Plaintiffs do not set forth the services to which he was ostensibly entitled, or how his learning disability entitled him to separate housing. In addition, the FAC fails to allege that the denial of services or separate housing caused the suffered harm. Thus, the FAC fails to allege facts that plausibly suggest a causal link between failing to provide services and/or appropriate housing and any harm and therefore does not allege sufficiently the second required element of deliberate indifference to medical needs—*i.e.*, harm caused by the indifference. *Jett*, 439 F.3d at 1096. Accordingly, the Section 1983 claim premised on a failure to provide mental health services and separate housing is dismissed with leave to amend.

### d. First and Fourteenth Amendment – Loss of Familial Relationship

The FAC states that the following rights under the Fourteenth Amendment were violated: (1) right to be free from deliberate indifference to Mr. Muniz's serious medical needs, (2) right to be free from reckless disregard to the substantial risk of serious harm to Mr. Muniz's safety, (3) rights and liberty interests of an inmate to restorative treatment, and (4) right to be free from interference of familial relationships. ECF No. 10 ¶ 62.

Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause, or if not yet convicted, under the Fourteenth Amendment's Due Process Clause. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016). As Mr. Muniz was in custody at the time of his death, the successor-in-interest claims brought on his behalf are properly asserted under the Eighth Amendment. As discussed below, Ms. Muniz's claim for loss of companionship and society is cognizable under the Fourteenth Amendment's substantive due process clause.

Defendants argue that nothing in the FAC supports a claim under the First Amendment. ECF No. 13-1, at 11. Plaintiffs do not counter this contention in their opposition to the motion to dismiss. *See*

*generally* ECF No. 19-1. Plaintiffs have made no allegation regarding how their First Amendment rights were violated other than to claim that Defendants violated "[t]he right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support, as secured by the First and Fourteenth Amendments." ECF No. 10 ¶ 62(d). This assertion does not elucidate how Plaintiffs claim that their rights under the First Amendment, *i.e.* freedom of speech, press, religion, or assembly, have been violated. *See* Const. amend I. Accordingly, to the extent the FAC relies on a First Amendment violation, it is dismissed with leave to amend.

Defendants contend that the remaining loss of familial relationship claim fails because the FAC sets forth no allegations regarding the relationship between Ms. Muniz and her son prior to his incarceration and death. ECF No. 13-1, at 10. Relying on *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018), Defendants claim that few close relationships, even between blood relatives can serve as a basis for asserting Fourteenth Amendment loss of companionship claims. ECF No. 13-1, at 10. This argument is unavailing.

Plaintiffs claim that Defendants violated their "right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support, as secured by the First and Fourteenth Amendments." ECF No. 10 ¶ 62. The "freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate." *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544 (1987). "Both parents and children of a decedent have been found to have a constitutionally protected liberty interest in their familial relationship under the Fourteenth Amendment." *Kim v. City of Santa Clara*, No. C 09-00025 RS, 2010 WL 2034774, at *6 (N.D. Cal. May 19, 2010) (citing *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)). This interest extends to the relationship between a parent and an adult child. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014).

This case stands in stark contrast to *Wheeler*, 894 F.3d 1046. In *Wheeler*, the biological son of a

police shooting victim brought, *inter alia*, a Fourteenth Amendment claim for loss of companionship. 894 F.3d at 1049-50. The Ninth Circuit upheld the trial court's ruling that because Wheeler was adopted-out to other parents when he was an infant, his relationship with the decedent had been legally severed, and under that case's set of facts, Wheeler had not established the constitutionally-protected relationship. *Id.* at 1058-59. The *Wheeler* Court explicitly limited its holding to the facts alleged there. *Id.* at 1058 ("Nor should this opinion be read to foreclose a case involving a true parent-child relationship in a different context where a constitutionally protected right may exist.").

In the present case, the existence of a parent-child relationship between Ms. Muniz and Mr. Muniz is not called into question. Ms. Muniz has a Fourteenth Amendment due process right to companionship and society of her adult son. *See Chaudry*, 751 F.3d at 1106. The Court rejects Defendants' argument that Plaintiffs have not properly pled the existence of a constitutionally-protected familial relationship.

**2. Supervisory liability under Section 1983**

In the Second Cause of Action, Plaintiffs allege that Mr. Muniz's injuries and death were a result of Warden Pfeiffer's and Secretary Diaz's failure to properly train and supervise CDCR staff. ECF No. 10 ¶¶ 70-77. The supervisory liability claim is brought against Warden Pfeiffer in his individual capacity and Secretary Diaz in his official capacity. *Id.*, at 22. Defendants argue that this cause of action fails to state a claim because Plaintiffs fail to allege that Warden Pfeiffer proximately caused the violation of constitutional rights. ECF No. 13-1, at 6.

**a. Failure to train and failure to supervise**

Vicarious liability may not be imposed on a supervisor for acts of employees in a Section 1983 action. *Lemire v. California Dep't of Corrections and Rehabilitation*, 726 F.3d 1062, 1074, (9th Cir. 2013). Under Section 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to

act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, a supervisor may be held liable under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and liability—of that supervisor." *Id.* at 1206-07. "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Id.* at 1207 (quoting *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

The causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. *Starr*, 652 F.3d at 1208. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the "training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

In *Redman*, 942 F.2d at 1447-48, the Ninth Circuit held that a reasonable jury could find that the defendant sheriff knew or should have known of the conditions of overcrowding at the jail and that he acquiesced in a deficient policy that was the moving force behind the plaintiff being raped by another inmate.

In the present case, Plaintiffs allege that Defendants failed to transfer decedent to inpatient psychiatric hospitalization. ECF No. 10 ¶ 72(a). They also allege that the Defendants failed to properly classify, house, and/or monitor inmates suffering from mental health disabilities, including placement in separate cells with lawful in-person monitoring, with adequate video and audio monitoring, and with

13

legally required cell alarms. *Id.* ¶ 72(b). Plaintiffs similarly allege that the Defendants failed to institute proper policies and procedures related to housing and caring for mentally ill and emotionally disturbed inmates. *Id.* ¶ 72(d).

These allegations do not set forth a plausible claim that Warden Pfeiffer was personally involved in the constitutional violation or that his action or inaction was the moving force behind Mr. Muniz's death. Namely, Plaintiffs do not allege any facts to suggest Defendants should have been aware of a training deficiency. The FAC also lacks factual allegations that Warden Pfeiffer knew or should have known that his subordinates were committing constitutional violations and that he acquiesced to such conduct. In addition, the FAC does not demonstrate a causal connection between the alleged policy failures and the alleged constitutional violations. Plaintiffs merely make the conclusory allegations that Warden Pfeiffer "set in motion a series of acts and omissions" and the unconstitutional actions were the "direct and proximate result" of the Plaintiffs' injuries. ECF No. 10 ¶¶ 71, 76. The relevant constitutional violation is the failure to protect Plaintiff from attack by his cellmate. The FAC does not connect the purported failure to train with preventing the attack.

The Court finds that the FAC is similar to the complaint in *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018):

> The complaint here does not allege that [the supervisor] was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that [the supervisor] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [the subordinate's] allegedly unconstitutional conduct. These allegations do not suffice to state a claim of supervisory liability.

For these reasons, Plaintiffs have failed to state a plausible claim for relief for failure to train or failure to supervise. Because the Court cannot hold that the pleading could not be amended to state a cause of action, this claim is dismissed with leave to amend. *See Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc*., 911 F.2d 242, 247 (9th Cir. 1990).

**3. Qualified Immunity**

Defendants argue that Warden Pfeiffer is entitled to qualified immunity as to any claim based upon failure to monitor Plaintiff's cell because existing precedent does not establish that prisons are required to install and monitor cameras in and around an inmate's cell. ECF No. 13-1, at 9.

Qualified immunity is an affirmative defense to a Section 1983 claim that "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Further, it "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*

To determine whether officers are entitled to qualified immunity, a court conducts a two-step inquiry. "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231.

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2004)). Existing law must have placed the constitutionality of the officer's conduct beyond debate. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). In cases where a set of novel factual circumstances gives rise to an alleged deprivation of constitutional rights, an official may still be on

notice that his or her conduct violates established law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In the FAC, Plaintiffs allege that Defendant Warden Pfeiffer and the Doe Defendants "had an obligation to monitor the video feeds to assure that inmates in the Unit did not engage in prohibited conduct, including acts of violence . . . ." ECF No. 10 ¶ 30. Similarly, Plaintiffs allege that the same defendants acted with reckless disregard for the safety of Mr. Muniz "when they did not monitor the live video surveillance for Facility C showing suspicious activity that should have triggered intervention . . ." *Id.* ¶ 37. Defendants counter that "[n]o binding case holds that a prison official monitoring a prison housing unit must have continuous, direct observation over inmates confined in their cells . . . ." ECF No. 13-1, at 9. Defendants assert qualified immunity only with respect to Plaintiffs' claim that Defendant Warden and the Doe Defendants violated Plaintiffs rights by failing to monitor the live video in Facility C. ECF No. 13-1, at 9. Defendants aver that they did not violate a clearly established right by failing to monitor the video, especially given the presence of correctional officers monitoring the unit. *Id.*

The right of prisoners to be protected from violence at the hands of other inmates is well established. *Castro*, 833 F.3d at 1067; *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "The Supreme Court need not catalogue every way in which one inmate can harm another" to conclude that a reasonable officer would know that such action would violate a person's constitutional rights. *Castro*, 833 F.3d at 1067. However, in *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019), the Supreme Court held that the Court of Appeals erred by defining the clearly established right "at a high level of generality by saying only that the 'right to be free of excessive force' was clearly established." With the exception of the rare obvious case, to constitute a clearly established right, the case law must show that an officer acting under similar circumstances violated a person's constitutional rights. *Emmons*, 139 S. Ct. at 504.

> [W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. . . . While there does not have to be a case directly on point, existing precedent must place the lawfulness of the

particular [action] beyond debate. . . . Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. . . . But a body of relevant case law is usually necessary to clearly establish the answer. . . .

*Id.* (quoting *Wesby*, 138 S. Ct. at 581).

In the present case, Plaintiffs have not cited—and this Court cannot find—a case showing that a failure to continuously watch surveillance video was found to violate a plaintiff's constitutional rights. Nor is this the rare obvious case. Applying such a high burden to the already-demanding functions of prison correctional officers is untenable, and this Court declines the invitation to do so. Hypothetically, it would be one thing to allege that a corrections officer witnessed threatening conduct on video and deliberately chose not to act. It is quite another to suggest that prison officials have a duty to monitor video twenty-four hours a day, seven days a week to prevent prisoner-on-prisoner violence or preparations for the same. Therefore, Warden Pfeiffer is entitled to qualified immunity to the extent that the Section 1983 claim alleges a failure to monitor the live video in Facility C. Applying qualified immunity to Warden Pfeiffer in this circumstance comports with the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *See Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Because Defendants only assert qualified immunity in this regard, the Court does not address whether qualified immunity applies to the remaining aspects of Plaintiffs' Section 1983 claims.

**B. ADA and RA Claims**

Because the elements of the ADA and the RA claims are the same for the purpose of the present case—and the claims are brought in a single cause of action—they are addressed together.

*ADA and RA claims brought in survival action*

First, the Court addresses whether the ADA and RA claims can be raised in a survival action such as the present one.

Under federal common law, federal claims typically survive a decedent's death if they are

remedial in nature and not penal. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1056-57 (9th Cir. 2018). The purposes of the ADA and RA are remedial: "the goals of both acts were to promote the rights of disabled individuals and to provide compensation when they experienced discrimination." *Id.* (citing 42 U.S.C. § 12101 & 29 U.S.C. § 701). In *Wheeler*, the Ninth Circuit held that the ADA and RA compensatory claims did not abate on the decedent's death, but the punitive claims did. 894 F.3d at 1057. Hence, Plaintiffs' compensatory claims under the ADA and RA are properly raised in the present case.

*Elements of ADA and RA claims*

The ADA was enacted "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (quoting 42 U.S.C. § 12101(b)(2)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *McGary v. City of Portland*, 386 F.3d 1259, 1264-65 (9th Cir. 2004) (quoting 42 U.S.C. § 12132). In order to state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege four elements: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was excluded from participation, denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *McGary*, 386 F.3d at 1265. To recover damages under an ADA claim, a plaintiff must prove intentional discrimination. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act. *Duvall*, 260 F.3d at 1135. A plaintiff who brings suit under Section 504 must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the

program solely by reason of his disability; and (4) the program receives federal financial assistance. *Id.* To recover monetary damages under the RA, a plaintiff must also prove that the defendant engaged in intentional discrimination. *Id.* at 1138.

*Intentional discrimination*

The Defendants argue that the ADA claim fails because Plaintiffs do not allege facts showing that Warden Pfeiffer and Secretary Diaz intentionally discriminated against Mr. Muniz based on his disability. ECF No. 13-1, at 11.

Proof of intentional discrimination is not required to make out a violation of the ADA. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004). But to recover damages under Title II of the ADA or the RA, a plaintiff must prove intentional discrimination on the part of the defendant. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) ("'[C]ompensatory damages are not available under Title II [of the ADA] or § 504 [of the RA] absent a showing of discriminatory intent.'").[4] The Ninth Circuit has adopted the deliberate indifference standard in proving intentional discrimination under the ADA and the RA. *Duvall*, 260 F.3d at 1138. That is, the plaintiff must prove "both knowledge that harm to a federally protected right was substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

In Plaintiffs' opposition to Defendants' motion to dismiss, they argue that "CDCR's willful failure to properly train and supervise CDCR staff, employees and officers on how to appropriately treat, monitor, and interact with disabled persons violated [Mr. Muniz's] rights to equal treatment on the basis

---

[4] The Court notes that under certain circumstances, nominal damages may be awarded for violations of the ADA even in the absence of intentional discrimination. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 874-75 (9th Cir. 2017) (holding that ADA lawsuit brought by former employee against employer was not moot because he could be awarded nominal damages under 42 U.S.C. § 12203). If Plaintiffs seek nominal damages, they should specifically state this request in any amended complaint.

of his disability." ECF No. 19-1, at 14. The FAC alleges that Defendants knew Mr. Muniz had a disability covered by the ADA and failed to provide him with accommodations and services offered by the CDCR. ECF No. 10 ¶ 86. Next, Plaintiffs contend that "by reason of Decedent's mental disabilities, Defendants did not afford him an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals . . . ." *Id.*

Contrary to Defendants' argument, on its face, there are enough facts pled to infer intentional discrimination—or deliberate indifference—based on Mr. Muniz's disability. Although stated quite broadly, Plaintiffs claim that Defendants knew Mr. Muniz had a disability and discriminated against him based on his disability. ECF No. 10 ¶ 86 ("Defendants . . . discriminated against DECEDENT . . . [and] they knew [he] was mentally disabled and at risk of assault . . . .").

*Alleged failure to provide services and accommodations*

Next, Defendants argue that the "FAC lacks factual allegations sufficient to support the inference that Mr. Muniz was excluded from or denied reasonable accommodation for any specific program or service . . . ." ECF No. 13-1, at 12. Plaintiffs contend that because of his disability, Mr. Muniz was eligible for mental health programs and services offered by the prison. *Id.* ¶¶ 79-80. Plaintiffs claim that Defendants knew that Mr. Muniz was at a higher risk of assault due to his disability. *Id.*

The Court agrees that the FAC only states a lack of accommodation in the most general of terms. Plaintiffs do not state what programs or services Mr. Muniz should have been offered. "Defendants did not afford [Mr. Muniz] an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants in violation of 28 C.F.R. § 35.130(b)(1)(ii)." ECF No. 10 at ¶ 86. This thin allegation is insufficient to survive a motion to dismiss. *See Iqbal*, 566 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[5] Similarly, the FAC states that other non-disabled inmates were

---

[5] The Court notes that Plaintiffs' ADA and RA allegations also fail to allege that Mr. Muniz actually

20

provided such services. Without knowing what these putative services are, Plaintiffs have failed to put the Defendants on notice of the alleged unlawful conduct. For these reasons, the Court grants Defendants' motion to dismiss the ADA and RA claims with leave to amend.

*Injunctive Relief*

To the extent that Plaintiffs seek injunctive relief based on an alleged failure to provide services for Mr. Muniz's disability, the claim is moot as a result of Mr. Muniz's death. *See Kalani v. Starbucks Coffee Company*, 698 Fed. Appx. 883, 885 (9th Cir. 2017) (unpublished) (claims for injunctive relief arising under the ADA rendered moot by plaintiff's death). The Court has no ability to order KVSP to offer appropriate services to Mr. Muniz who is now deceased, and Plaintiffs do not request KVSP to take corrective action on behalf of other KVSP inmates.

In sum, Plaintiffs' ADA and RA claims and request for damages are dismissed with leave to amend for failure to allege which services and programs the prison purportedly failed to offer Mr. Muniz.[6]

## C. Violation of California Gov't Code § 845.6

Next, Plaintiffs allege a violation of California Government Code § 845.6 ("Section 845.6") for failing to take reasonable action to summon medical care following the attack on Mr. Muniz. ECF No. 10 ¶ 91.

_____

requested an accommodation with KVSP. *See Duvall*, 260 F.3d at 1139 (a public entity is on notice that an accommodation is required when the plaintiff alerts the public entity to his need for the accommodation or when the need for accommodation is obvious).

[6] The Defendants argue that the RA claims fail because the RA does not provide for monetary relief, citing the Supreme Court decision in *Lane v. Pena*, 518 U.S. 187 (1996). ECF No. 13-1, at 11. However, *Lane* merely resolves the question of whether the federal government has waived its sovereign immunity for monetary damages under Section 504 of the RA. 518 U.S. at 200. The lawsuit in the present case is not against the federal government, so *Lane* is not controlling. The Ninth Circuit has stated that monetary damages are recoverable under Title II of the ADA and the RA. *See Duvall*, 260 F.3d at 1138; *see also Ferguson v. City of Phoenix*, 157 F.3d 668, 673-74 (9th Cir. 1998).

Section 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. . . .

Plaintiffs allege that Warden Pfeiffer and the Doe Defendants knew or had reason to know that Mr. Muniz needed medical care after the attack, yet they failed to take reasonable action to summon medical care. ECF No. 10 ¶ 91. Plaintiffs also claim that Warden Pfeiffer and the Doe Defendants violated Section 845.6 by failing to provide Mr. Muniz special housing accommodations under such circumstances. *Id.*

Liability to public entities and public employees under Section 845.6 is "limited to serious and obvious medical conditions requiring immediate care." *Lucas v. Cty. of Los Angeles*, 47 Cal. App. 4th 277, 288 (1996).

Plaintiffs' conclusory allegation that Warden Pfeiffer and the Doe Defendants failed to summon medical care is directly refuted by facts alleged in the FAC that suggest medical care was summoned in a timely manner. *See* ECF No. 10 ¶¶ 20-21. Plaintiffs allege that, after finding Mr. Muniz unresponsive in his cell, KVSP staff sounded an alarm, removed Mr. Muniz's cellmate, and transported Mr. Muniz to an outside hospital for treatment of serious head injuries. *Id.* Nothing in the complaint suggests the timing of this response was dilatory or otherwise unreasonable. Therefore, the FAC fails to state a claim that Warden Pfeiffer and the unknown defendants failed to take reasonable action to summon medical treatment.

Similarly, the claim that Warden Pfeiffer and the unknown defendants violated Section 845.6 by failing to provide Mr. Muniz housing accommodations is similarly unsupported by factual allegations. Plaintiffs do not allege that Mr. Muniz presented a serious and obvious medical condition requiring immediate care.

Therefore, the Court dismisses the Section 845.6 claim with leave to amend.

**D. <u>Negligence and Wrongful Death</u>**

Plaintiffs contend that Secretary Diaz in his official capacity, Warden Pfeiffer in his individual capacity, and the unknown defendants in their individual capacities negligently caused the wrongful death of Mr. Muniz. ECF No. 10 ¶¶ 93-99. The FAC lists seven duties that Defendants' allegedly owed Mr. Muniz. *Id.* ¶ 96. Then, in summary fashion, Plaintiffs allege "By the acts and omissions set forth more fully in the paragraphs above, Defendants . . . acted negligently and breached their duty of due care owed to [Mr. Muniz] . . . ." *Id.* ¶ 97. Defendants argue that (1) Warden Pfeiffer is immune from this claim, and (2) Plaintiffs have failed to allege that Warden Pfeiffer breached a duty of care. ECF No. 13-1, at 15-16.

*Immunity for policy-planning level decisions*

Defendants argue that California Government Code § 820.2 ("Section 820.2") grants Warden Pfeiffer immunity for the wrongful death claim. This provision states:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Cal. Gov't Code § 820.2.

"Whether a public employee is entitled to immunity for discretionary acts hinges on whether the acts or omissions in dispute constitute 'basic policy decisions' or 'ministerial' decisions." *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011) (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). Statutory immunity for discretionary acts of public employees under California law is "reserved for those basic policy decisions which have been expressly committed to coordinate branches of government." *Id.* (quoting *Johnson v. State*, 69 Cal. 2d 782, 793 (1968) (internal quotation marks and modifications omitted). On the other hand, there is no basis for immunizing "lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." *Id.* (quoting *Caldwell*, 10 Cal. 4th at 981). There is also no basis for immunizing decisions

that are not deliberate and considered. *Id.*

In *Estate of Abdollahi v. Cty. of Sacramento*, the estates of three deceased inmates brought civil rights actions and state law claims against the county jail and jail officials. 405 F. Supp. 2d 1194, 1199 (E.D. Cal. 2016). This Court determined that to the extent the plaintiffs challenged the adequacy of the jail's detoxification and suicide prevention programs, officials were immune because these were "the types of basic policy decisions that the legislature granted immunity for in § 820.2." *Id.* at 1214.

In the present case, the alleged wrongful acts of Warden Pfeiffer are the failure to train KVSP staff, failure to supervise KVSP staff, and failure to implement proper procedures that would have prevented the death of Mr. Muniz.[7] These acts fall squarely under the immunity provided in Section 820.2. Thus, the negligence and wrongful death claim against Warden Pfeiffer is dismissed with leave to amend. This will provide Plaintiffs the opportunity, should they desire, to clarify the extent to which they allege Warden Pfeiffer is culpable for his conduct not constituting a basic policy decision.[8]

*Negligence Claim against Secretary Diaz in his official capacity*

Plaintiffs' negligence and wrongful death claim against Secretary Diaz in his official capacity is barred by the Eleventh Amendment to the U.S. Constitution. A claim for damages against a state official in his official capacity is barred by the Eleventh Amendment absent consent of the state. *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).[9] "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Halderman*, 465 U.S. at 101 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). When the suit is for recovery of money from the state, the state is

---

[7] As discussed above, Plaintiffs fail to allege Warden Pfeiffer was personally involved in the monitoring of Mr. Muniz's cell or the subsequent response to the attack.

[8] The Fifth Cause of Action against Secretary Diaz in his official capacity is discussed below.

[9] Alternatively, Congress may, by enacting unequivocal statutory language, abrogate a state's Eleventh Amendment immunity, *see Pennhurst*, 465 U.S. at 99, but no relevant federal statute applies here.

the real, substantial party in interest. *Regents of the Univ. of Calif.*, 519 U.S. at 429. When, as here, a plaintiff sues a government official in his official capacity for money damages, the state is the real, substantial party in interest, and the lawsuit is barred by the Eleventh Amendment.

A state's sovereign immunity may be waived, and the Supreme Court has held that a state may consent to suit against it in federal court. *Halderman*, 465 U.S. at 99. The test for determining whether a state has waived its immunity from federal court jurisdiction is a stringent one. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). A waiver will be found if the state voluntarily invokes Supreme Court jurisdiction or if the state makes a clear declaration that it intends to submit itself to the Supreme Court's jurisdiction. *Id.* The state's consent to suit must be "unequivocally expressed." *Id.* (quoting *Pennhurst*, 465 U.S. at 99). And a state may, absent any contractual commitment to the contrary, alter the conditions of its waiver and apply the changes to a pending lawsuit. *Id.*

In Plaintiffs' brief in opposition to the motion to dismiss, they cite to various statutes, *inter alia* California Gov't Code §§ 815.2, 815.4, 835, in support of the argument that the state has consented to the present lawsuit and thereby waived its sovereign immunity. ECF No. 19-1, at 16-18. These arguments and the cited authority fail to demonstrate that the state has unequivocally waived sovereign immunity in the present case. *See Nehara v. California*, 10-cv-491-OWW-SMS, 2010 WL 2822850, at *5 (E.D. Cal. July 16, 2010) (rejecting argument that Cal. Gov't Code § 815.2 constitutes a waiver of sovereign immunity); *see also Resendiz v. Cty. of Monterey*, No. 14-cv-05495-LHK, 2015 WL 3988495, at *6 (N.D. Cal. June 30, 2015) (holding Cal. Gov't Code § 815.4 did not abrogate the County of Monterey's immunity from injuries to prisoners under Cal. Gov't Code § 844.6).

For these reasons, the negligence and wrongful death claim against Secretary Diaz is dismissed as barred by the Eleventh Amendment. With the Eleventh Amendment barring the state law claims against Secretary Diaz, the Court declines Defendants' request for the Court to take judicial notice of Secretary Diaz's start of employment with CDCR. *See* ECF No. 13-1, at 13. Because it is determined as

a matter of law that this claim for money damages may not proceed against Secretary Diaz in his official capacity, the claim is dismissed without leave to amend.

## V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs are granted leave to the amend the FAC to the extent stated in this order. Plaintiffs shall have 21 days to amend the complaint or to file notice indicating they do not intend to amend. Defendants shall have 21 days from the date of Plaintiffs' filing to file a responsive pleading or appropriate motion.

IT IS SO ORDERED.

Dated:   **September 23, 2019**            **/s/ Lawrence J. O'Neill**
                                   UNITED STATES CHIEF DISTRICT JUDGE