1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    CELINA MUNIZ, et al.,                      Case No. 1:19-cv-00233-JLT-CDB

12                    Plaintiffs,                ORDER DENYING PLAINTIFFS'
                                                 MOTION FOR DISCOVERY
13           v.                                  EXTENSION; GRANTING EXTENSION
                                                 IN TIME TO OPPOSE DEFENDANTS'
14    C. PFEIFFER, et al.,                       MOTION FOR SUMMARY JUDGMENT

15                    Defendants.                (ECF No. 80)

16

17

18                                **INTRODUCTION**

19           This is an action by the estate of Daniel Muniz (the decedent) and his mother Celina

20    Muniz against staff from the Kern Valley State Prison (KVSP).  On November 14, 2022,

21    Plaintiffs filed the instant motion seeking a 120-day extension in the time to complete fact

22    discovery, and a corresponding four-month extension in the time to oppose Defendants' motion

23    for summary judgment.  (Doc. 80).  In the motion, Plaintiffs first contend that they need

24    additional time to depose two named defendants and a percipient witness.  Next, Plaintiffs argue

25    they need additional time to discover the identities of custodial officers who were on duty during

26    the shift that turned over at 6:00 a.m. on the day of the incident.  Finally, Plaintiffs seek a

27    corresponding extension in time to oppose Defendants' pending motion for summary judgement

28    pursuant to Federal Rule of Civil Procedure 56(d) so that they can incorporate in their anticipated

1    opposition papers the information learned during the requested discovery extension.  By their

2    motion, Plaintiffs also seek leave to amend the complaint to add as-yet identified Defendants.

3                                        **FACTUAL BACKGROUND**

4            Plaintiffs raise a series of civil rights and negligence claims against Defendants stemming

5    from another inmate's alleged killing of the decedent on or about March 24, 2018.  The

6    Defendants named in the operative, Second Amended Complaint (Doc. 25, filed October 15,

7    2019) are Christian Pfeiffer (warden), Ralph Diaz, D. Goss (assistant warden), Jeremy Custer, J.

8    Fitzpatrick, M. Faulkner, A. Diaz-Albarran, R. Calderon, and Marques Jones.

9            In their initial Joint Scheduling Report filed November 26, 2019, the parties estimated that

10   fact discovery would require 11 months to complete. (Doc. 31 at Par. II(D)(1)).   Plaintiffs

11   represented that during fact discovery, they would depose "[a]ll named defendants." (*Id.* at Par.

12   II(B)(i)).  Plaintiffs also committed to filing any amended pleadings four-and-a-half months prior

13   to the close of fact discovery.  (*Id.* at Par. III).

14           The proceedings were stayed in March 2020 due to the COVID-19 pandemic.  That stay

15   was lifted on June 3, 2021.  (Doc. 59).  Thereafter, the parties submitted a proposal for

16   rescheduled discovery dates, which the Court approved in its updated Scheduling Order.  (Doc.

17   62).  Among other things, the parties estimated that fact discovery would require eight additional

18   months to complete – by February 25, 2022.

19           On October 25, 2021, the parties filed their Joint Mid-Discovery Conference Report.

20   (Doc. 63).  Plaintiffs represented that they still intended to depose the named defendants,

21   including D. Goss, and that they did not expect "any of the depositions [to] take very long." (*Id.*

22   at Par. I(c))).  Plaintiffs also represented that they intended to propound interrogatories. (*Id.* at

23   Par. I(b)).  Finally, the parties represented that they had prepared a proposed protective order that

24   they expected to file shortly.  (*Id.* at Par. I(d)).  Both parties represented that they had no

25   discovery disputes and neither party identified any impediment to completing fact discovery

26   within the Court-ordered timeframe.

27           On February 15, 2022 – almost four months later and with only ten days left within which

28   to complete fact discovery – the parties filed a stipulation seeking, among other things, a 90-day

2

1   extension in the time to finish fact discovery.  (Doc. 69). The parties represented that the

2   additional time was not being requested and would not be used for additional written discovery,

3   but rather, was needed to "complete the outstanding written discovery responses and document

4   production." (*Id*. at Par. 7).  The parties again reported that they had prepared a stipulated

5   protective order (presumably, the same protective order the parties already had prepared and

6   reported to the Court almost four months earlier), and that the protective order "will be filed

7   within five days of the date of this stipulation." (*Id.* at Par. 4).  In fact, as explained below, the

8   protective order would not be filed until four months later.

9        On June 3, 2022, the parties filed a stipulation seeking another extension in the time to

10  finish fact discovery.  (Doc. 71).  The parties repeated representations they had made in the earlier

11  stipulation:  that a protective order had been prepared and would be filed within five days, and

12  that the requested 120-day extension would not be used to propound additional written discovery,

13  but to complete ongoing discovery.  The parties newly reported that they would notice

14  depositions of the named parties during the week of July 18, 2022.

15       On August 29, 2022, the parties filed a stipulation seeking another extension in the time to

16  finish fact discovery.  (Doc. 75).  The parties represented that an additional 90 days was necessary

17  to complete ongoing discovery and take depositions of the named parties "in September and/or

18  October."

19       In none of the aforementioned joint reports or stipulations for discovery extensions did

20  either party identify to the Court any dispute concerning discovery.  On November 8, 2022,

21  Defendants filed a motion for summary judgment.  (Doc. 79).

22                                    **LEGAL STANDARD**

23       Under Federal Rule of Civil Procedure 16, a scheduling order "may be modified only for

24  good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause'

25  standard primarily considers the diligence of the party seeking the amendment." *Johnson v.*

26  *Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992).  If the moving party is unable to

27  reasonably meet a deadline despite acting diligently, the scheduling order may be modified.  *Id*.

28  If, however, the moving party "'was not diligent, the inquiry should end' and the motion to

                                          3

1    modify should not be granted." *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.

2    2002) (*quoting Johnson*, 975 F.2d at 609).

3         Separately the Court may deny a motion for leave to amend if permitting an amendment

4    would, among other things, cause an undue delay in the litigation or prejudice the opposing party.

5    Courts have found amendments to be prejudicial when leave to amend is requested as a discovery

6    deadline nears or has already passed.  *See, e.g., Zivkovic*, 302 F.3d at 1087; *Lockheed Martin*

7    *Corp. v. Network Sols., Inc.,* 194 F.3d 980, 986 (9th Cir. 1999).  Prejudice is inherent where the

8    requested leave to amend is made shortly before discovery closes with a looming trial date and

9    pending dispositive motions.

10                                     **ANALYSIS**

11        In their motion and supporting declaration and during a status conference on the motion

12   held November 21, 2022 (Doc. 84), Plaintiffs argue that the period for engaging in fact discovery

13   should be continued for four additional months. Plaintiffs assert that an extension is warranted

14   because (1) Defendants only recently have produced documents and other materials revealing the

15   need to undertake additional depositions, and (2) it is only through recently completed

16   depositions that Plaintiffs have learned of the need to depose additional custodial officers who

17   were on duty the day of incident.

18        As an initial matter, the parties seemed to agree during the November 21 status conference

19   that Defendants' recent production of certain documents – including documents at the center of

20   Plaintiff's instant motion (discussed below) – was delayed for a protracted period while the

21   parties finalized a stipulated protective order.  Plaintiffs first reported in the parties' Mid-

22   Discovery Conference Joint Report (Doc. 63), filed October 25, 2021, that Defendants required a

23   protective order and that the parties already had exchanged drafts of that proposed protective

24   order.  However, the parties did not file their stipulation for the final protective order until almost

25   eight months later.  (Doc. 72).  In the intervening seven-plus months, the parties reported to the

26   Court on two separate occasions (Docs. 69, 71) that they were close to finalizing and filing the

27   stipulated protective order.

28        On May 10, 2022, Plaintiffs inquired with Defendants about outstanding discovery and

4

1    Defendants reiterated that they would not produce the requested documents without a protective

2    order.  (Galindo Decl. Par. 26, Doc. 80-1).  At no time before or after the May 10 email exchange

3    did Plaintiffs notify or seek assistance from the Court to facilitate discovery or finalization of the

4    protective order.  Based on these facts and circumstances, the Court finds that Plaintiffs did not

5    exercise reasonable diligence in seeking, finalizing and filing a stipulation for the protective

6    order.

7         Plaintiffs assert that on September 28, 2022, Defendants produced documents concerning

8    the classification of the inmate alleged to have killed Muniz, as well as information indicating

9    that the same inmate had been involved in an earlier attack.  According to Plaintiffs, these

10   recently produced documents highlight the need now for Plaintiffs to depose Defendant D. Goss,

11   the assistant warden who reportedly was the chairperson of the inmate's classification committee.

12   (Id. Par. 44).

13        However, Plaintiffs long have maintained and represented to the Court that they always

14   intended to seek to depose D. Goss and they offer not explanation why that deposition was not

15   taken before now.  Thus, Plaintiffs first reported that they would depose D. Goss in the parties'

16   initial scheduling report filed November 26, 2019 (Doc. 31) and reiterated their intention to

17   depose him in a joint report filed with Court in October 2021.  (Doc. 63).

18        To the extent Plaintiffs argue that the value in deposing D. Goss was not obvious until

19   after Defendants' production of documents on September 28, 2022, as set forth above, Plaintiffs

20   largely are to blame for the delayed filing of a stipulated protective order that facilitated

21   production of those documents.  Had Plaintiffs brought to the Court's attention the challenges the

22   parties confronted in finalizing a proposed protective order months ago, the Court would have

23   been in a position to facilitate resolution of the protective order issues and keep the case on

24   schedule.

25        Plaintiffs separately note that Defendants recently produced a video reportedly taken by

26   an officer involved in the transport of Muniz to the triage area sometime after the attack on March

27   24, 2018.  Plaintiffs argue that this video shows dried blood on Muniz, suggesting the attack

28   against Muniz in fact occurred much earlier than the time custodial officers discovered Muniz

1    (6:32 a.m.).  This recently produced video, Plaintiffs argue, reveals a newfound need to depose

2    additional custodial officers who were on duty during the shift between 10:00 p.m. and 6:00 a.m.

3    leading-up the attack.

4         However, as they concede, Plaintiffs were aware of the officer's name and his

5    involvement in the transport of Muniz as early as October 2019 – long before the recent

6    production of the video.  (Gille Decl. Ex. B, Doc. 83-1).  Once the stay of these proceedings was

7    lifted in June 2021, nothing prevented Plaintiffs from seeking to depose the officer.  Although the

8    existence of the video that the officer reportedly took either during Muniz's transport or at the

9    triage area may highlight increased value in deposing the officer, Defendants are not to blame for

10   the video's arguably delayed production.  At the status conference, the Court asked counsel for

11   Plaintiffs which of his requests for production expressly required the production of videos of

12   Muniz's transport or of the triage area, and counsel could only identify Request #10, which was

13   limited to photographs of decedent (not videos).  (Galindo Decl. Par. 26, Doc. 80-1).  Even

14   assuming Defendants were required to produce the video as responsive to Plaintiffs' requests for

15   production, as discussed above, Plaintiffs did not exercise reasonable diligence in seeking a

16   protective order; had they, production of the video likely would have been accelerated.

17        The Court notes that despite representing to the Court in their discovery plan that they

18   intended to propound interrogatories (Doc. 63), Plaintiffs inexplicably *never* served

19   interrogatories on the Defendants.  Thus, putting aside the issue of the parties' tardiness in

20   entering a stipulated protective order to facilitate Defendants' document production, Plaintiffs

21   could have undertaken additional discovery through interrogatories that likely would have

22   revealed their apparently erroneous assumption about the timing of Muniz's attack.

23                                **CONCLUSION AND ORDER**

24        Given the number of discovery extensions already granted in this case, Plaintiffs' lack of

25   diligence in pursuing or seeking Court intervention to facilitate entry of a protective order, and

26   Plaintiffs' decision to forgo serving interrogatories, Plaintiffs are not entitled to another extension

27   to engage in additional non-expert discovery.  *See Zivkovic*, 302 F.3d at 1087 ("Zivkovic did not

28   demonstrate diligence in complying with the dates set by the district court, and has not

1  demonstrated 'good cause' for modifying the scheduling order, as required by Fed.R.Civ.P.

2  16(b).").

3       Nor do Plaintiffs carry their burden under Rules 15 and 16 for leave to amend.  As set

4  forth above, fact discovery is scheduled to close in eight days, Defendants have filed a motion for

5  summary judgment, and trial is set to commence in less than five months.  Plaintiffs' anticipated

6  amendments include adding currently unknown defendants, which invariably would require

7  continuing the trial date and result in prejudice to the Defendants.  *See Jackson v. Bank of*

8  *Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("A trial court may deny such a motion if permitting

9  an amendment would prejudice the opposing party [and] produce an undue delay in the

10  litigation").

11

12       Accordingly, for the foregoing reasons, it is HEREBY ORDERED that Plaintiffs' motion

13  to extend fact discovery and amend the complaint is DENIED.

14       It is FURTHER ORDERED that Plaintiffs time to oppose Defendants' motion for

15  summary judgment shall be continued from November 22, 2022, to December 2, 2022.  *See*

16  *Qualls v. Blue Cross of Ca., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (reopening discovery not

17  warranted unless movants "show how allowing additional discovery would have precluded

18  summary judgment").

19  IT IS SO ORDERED.

20    Dated:   **November 22, 2022**

21                      UNITED STATES MAGISTRATE JUDGE