1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL MUNIZ, through his successor        Case No. 1:19-cv-00233-JLT-CDB (PC)
     in interest CELINA MUNIZ,
12                                              **FINDINGS AND RECOMMENDATIONS
                    Plaintiff,                  TO GRANT DEFENDANTS' MOTION
13                                              FOR SUMMARY JUDGMENT**[1]
          v.
14                                              **OBJECTIONS DUE WITHIN 14 DAYS**
     CHRISTIAN PFEIFFER, ET AL.,
15                                              (ECF No. 79)
                    Defendants.
16

17          This is an action by the estate of Daniel Muniz (the decedent) and his mother Celina

18   Muniz against staff from the Kern Valley State Prison (KVSP)[2] in which Muniz ("Plaintiff")

19   asserts civil rights claims under 42 U.S.C. § 1983 for failure to protect, denial of familial

20   relationship, wrongful death, and for violation of Cal. Code § 845.6.  (ECF Nos. 25, 35).  Pending

21   before the Court is Defendants' motion for summary judgment, filed November 8, 2022, with

22   declarations and exhibits filed in support. (ECF No. 79).  Plaintiff filed an opposition with a

23   declaration and sealed and unsealed exhibits (ECF Nos. 88 - 93), and Defendants filed a reply

24   with supporting declaration (ECF No. 94).

25          For the reasons stated below, the undersigned recommends that the district court grant

26   _____

27          [1] The undersigned submits these factual findings and recommendations to the District Court
     pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

28          [2] The individually named defendants are R. Calderon, J. Custer, A. Diaz-Albarran, M. Faulkner, J.
     Fitzpatrick, D. Goss, M. Jones, and C. Pfeiffer, collectively, "Defendants."

1   Defendants' motion.  When Plaintiff's allegations are viewed in their most favorable light, they

2   fail to show that the decision to double-cell decedent with another inmate recently released from

3   the Segregated Housing Unit (SHU) posed an objective, substantial risk of serious harm.  *See*

4   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding that an Eighth Amendment failure to

5   protect claim must allege that there was "objectively" a "substantial risk of serious harm" to

6   which defendant was indifferent).[3]  Because Plaintiff's speculative and general allegations do not

7   satisfy the deliberate indifference standard, I do not reach Defendants' alternate claimed bases for

8   summary judgment.

9   # I.  BACKGROUND

10       Daniel Muniz was a former California Department of Corrections and Rehabilitation

11   (CDCR) inmate who was fatally attacked by his cellmate, Toribio Mendoza (Mendoza) on March

12   24, 2018, while he was confined at Kern Valley State Prison (KVSP).  The Defendants are or

13   were correctional officers at KVSP when the incident occurred, except C. Pfeiffer who was the

14   warden.

15       Mendoza arrived at KVSP on July 1, 2016, from California Medical Facility (CMF).

16   Mendoza is serving a term of 109 years for kidnapping, criminal threats to cause great bodily

17   harm or death and assault with a deadly weapon.  Mendoza also is a "drop out" of the Security

18   Threat Group (STG) known as the Fresno Bulldogs.  Mendoza had committed 15 rules violations

19   during his incarceration between 2006 and 2018. (ECF No. 88-3, Ex. C p. 2).  Some notable

20   incidents include an in-cell battery of an inmate on September 2, 2007, and a battery on another

21   inmate that caused serious injury in 2017. *Id.*

22       Muniz arrived at KVSP on June 2, 2016 and was eligible for an earliest release date of

23   May 6, 2030. (Ex. C p. 14).  Muniz is a drop out of the South Side Kings STG. Muniz and

24   Mendoza had been cellmates together for a total of approximately three-and-one-half months,

25
26       [3] *See also Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013) ("The record, viewed objectively and subjectively, is insufficient to preclude summary judgment on the claim that . . .
27   officials were deliberately indifferent to a substantial risk that" one prisoner would assault another, since the two prisoners in question "had been in general population together for an extended period with no record of any threats or problems between them.").  While reasonable minds might disagree over the best
28   place to house decedent and his cellmate, a mere difference of opinion does not create a substantial risk. *Cf. Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

1   including for approximately seven weeks in the same cell where Mendoza attacked Muniz on

2   March 24, 2018.  *Id.* p. 1.

3        On March 24, 2018, at approximately 6:32 a.m., Defendants Diaz-Albarran and Calderon

4   were conducting a count of inmates and reached the cell in which Muniz and Mendoza were

5   housed.  (ECF No. 93-4, Ex. 4, Diaz-Albarran Depo., p. 48).  Diaz-Albarran did not hear any

6   commotion from the cell and none of the other inmates informed him that they heard any yelling

7   or screaming form the cell.  *Id.*  As he approached the cell, Diaz-Albarran encountered Mendoza,

8   who was blocking the cell-door with his body and had the lights turned off.  *Id.* p. 28.  Diaz-

9   Albarran ordered Mendoza to turn the lights on, after which the officers observed Muniz lying on

10  the ground, under the bunkbed.  Diaz-Albarran yelled for help from his partner Defendant

11  Calderon, and activated his alarm, which called for medical assistance. *Id.* p. 31.  Diaz-Albarran

12  noted that Muniz was still breathing and ordered Mendoza to "cuff up." *Id*. After securing

13  Mendoza, Diaz-Albarran escorted Mendoza out of the cell.

14       Once Mendoza was removed, medical personnel attended to Muniz, and they brought him

15  down to a lower tier.  (ECF No. 93-3 Ex. G., Calderon Depo., p. 45).  A post hoc review of the

16  incident conducted by CDCR concludes that Mendoza used his hands and feet to injure Muniz.

17  (Ex. C. p. 4).  Muniz suffered from extensive injuries to his brain including brain swelling, and a

18  subarachnoid hemorrhage.  Muniz's brain function deteriorated dramatically and ultimately

19  caused his death.

20  **II.  APPLICABLE LAW**

21       Summary judgment is appropriate where there is "no genuine dispute as to any material

22  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Washington*

23  *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine

24  only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,

25  while a fact is material if it "might affect the outcome of the suit under the governing law."

26  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818

27  F.2d 1422, 1436 (9th Cir. 1987).

28       Each party's position must be supported by: (1) citing to particular portions of materials in

3

1   the record, including but not limited to depositions, documents, declarations, or discovery; or

2   (2) showing that the materials cited do not establish the presence or absence of a genuine dispute

3   or that the opposing party cannot produce admissible evidence to support the fact.  *See* Fed. R.

4   Civ. P. 56(c)(1).  The court may consider other materials in the record not cited to by the parties,

5   but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified*

6   *School Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001) (on summary judgment, "the court has

7   discretion in appropriate circumstances to consider other materials, [but] it need not do so").

8   Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a

9   form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019

10  (9th Cir. 2011). (citations and internal quotations omitted).  The focus is on the admissibility of

11  the evidence's contents rather than its form.  *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374

12  F.3d 840, 846 (9th Cir. 2004).

13      "The moving party initially bears the burden of proving the absence of a genuine issue of

14  material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the

15  moving party must either produce evidence negating an essential element of the nonmoving

16  party's claim or defense or show that the nonmoving party does not have enough evidence of an

17  essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

18  *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this

19  initial burden, the burden then shifts to the non-moving party "to designate specific facts

20  demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d

21  376, 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than

22  the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477

23  U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material

24  issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to

25  require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W.*

26  *Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

27      The court must apply standards consistent with Rule 56 to determine whether the moving

28  party has demonstrated the absence of any genuine issue of material fact and that judgment is

4

1    appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

2    "[A] court ruling on a motion for summary judgment may not engage in credibility

3    determinations or the weighing of evidence."  *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir.

4    2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

5    nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.

6    *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,

7    198 F.3d 1130, 1134 (9th Cir. 2000).

8                                            **III.  DISCUSSION**

9            **A.       Summary of Plaintiff's Claims**

10            Plaintiff alleges that Defendant Goss (the associate warden) violated Plaintiff's 8th

11    Amendment constitutional rights in two respects.  First, Plaintiff alleges that Goss was

12    deliberately indifferent to the threat Mendoza posed to other inmates and erred when he housed

13    Mendoza with Muniz, as both inmates were dropouts from rival gangs and Mendoza had a history

14    of violence and mental health issues.

15            Plaintiff also asserts Goss erred months before Mendoza attacked Muniz when he

16    rescinded part of Mendoza's Special Housing Unit (SHU) term and "but for" this rescission,

17    Mendoza would never have been double-celled with Muniz.  Goss's decisions to rescind

18    Mendoza's SHU term and pair him with Muniz amounted to a failure to protect Muniz.

19            Plaintiff separately claims that Defendants Diaz-Albarran and Calderon failed to protect

20    Muniz, as they were on duty at the time Mendoza attacked Muniz and, thus, should have been

21    able to hear Muniz's labored breathing and yelling during their shifts, and relatedly, that they

22    violated Cal. Code §§ 844.6 and 845.6.

23            Notably, Plaintiff's brief and supporting materials offered in opposition to summary

24    judgment present no facts or argument with respect to Defendants J. Custer, M. Faulkner, J.

25    Fitzpatrick, M. Jones and C. Pfeiffer.  As set forth below, Defendants' motion for summary

26    judgment establishes that Plaintiff does not have enough evidence to demonstrate that any of

27    these five defendants were deliberately indifferent to a substantial risk that Mendoza would harm

28    Muniz.  Accordingly, it was Plaintiff's burden in opposition "to designate specific facts

1  demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d

2  at 387.  As Plaintiff failed to carry her burden, the undersigned limits the legal analysis of

3  Plaintiff's claims only as to defendants Goss, Diaz-Albarran, and Calderon.  *See Ramirez v. City*

4  *of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (holding that a party abandons an issue by

5  failing to address it in opposition to summary judgment).

B.    **Analysis of Plaintiff's Claims**

1. **Plaintiff's Deliberate Indifference Claims Against Goss**[4]

8  "The Eighth Amendment imposes a duty on prison officials to protect inmates from

9  violence at the hands of other inmates." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).  In

10  order to prevail on an Eighth Amendment claim, a prisoner must show that prison officials were

11  deliberately indifferent to a substantial risk of harm to his health or safety.  *Farmer v. Brennan*,

12  511 U.S. 825, 847 (1994).  "Deliberate indifference" has both subjective and objective

13  components, meaning that objectively, the prison conditions posed a risk of serious harm and

14  subjectively a prison official must "be aware of facts from which the inference could be drawn

15  that a substantial risk of serious harm exists, and . . . must also draw the inference." *Id.*, at 837;

16  *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013).  "Deliberate

17  indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. A prison official is liable only

18  when the official "knows that inmates face a substantial risk of serious harm and disregards that

19  risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

20  A jury may "conclude that a prison official knew of a substantial risk from the very fact

21  that the risk was obvious." *Id.* at 842.  For instance, if the "plaintiff presents evidence showing

22  that a substantial risk of inmate of attacks was 'longstanding, pervasive, well-documented, or

23  expressly noted by prison officials in the past, and the circumstances suggest that the defendant-

_____

[4] In her opposition to Defendants' motion for summary judgment, Plaintiff devotes a single sentence to refuting Defendants' showing that Defendants Diaz-Albarran and Calderon were not deliberately indifferent.  Opp. at 18.  The threadbare deliberate indifference theory advanced against those two Defendants is addressed below in connection with the Court's analysis of Plaintiff's Cal. Government Code claims against them.  Although it appears Plaintiff has abandoned her deliberate indifference claims against these two correctional officers and limits her opposition to Goss's liability, the Court nevertheless finds that for all the reasons Goss was not deliberately indifferent, neither were Defendants Diaz-Albarran and Calderon.

6

1   official being sued had been exposed to information concerning the risk and thus 'must have

2   known' about it, then such evidence could be sufficient to permit a trier of fact to find that the

3   defendant-official had actual knowledge of the risk.'" *Id*. at 842-43.  Liability for deliberate

4   indifference may not be premised on constructive notice, but prison officials cannot ignore

5   obvious dangers to inmates. *See id.* at 842.

6        Here, Plaintiff alleges that Defendant Goss – as the chairperson of the Institution

7   Classification Committee (ICC) on May 11, 2017 – was deliberately indifferent to the substantial

8   risk of harm Mendoza presented to the health and safety of Muniz in two respects.  (Ex. C p. 50).

9   First, Plaintiff asserts that Goss's involvement in the decision to house Muniz with Mendoza

10   demonstrated deliberate indifference.  Second, Plaintiff assert Goss's prior involvement in

11   Mendoza's early release from administrative segregation after being assessed a 19-month term to

12   be served in segregated housing for a rules infraction involving violence likewise demonstrated

13   deliberate indifference.  The two claims are analyzed below.

14                    a.        **The Double-Celling Decision**

15        Plaintiff asserts that Goss was deliberately indifferent when he authorized Muniz to

16   double-cell with Mendoza on account of the following factors:  (1) that Muniz was a drop out

17   from the South Side Kings, which placed him at considerable danger given that Mendoza is a

18   Fresno Bulldog drop out, an alleged rival of the South Side Kings; (2) that Mendoza had a history

19   of violence within CDCR facilities; and (3) that Mendoza suffered from mental health issues.

20        When Mendoza arrived at KVSP, he was subjected to an Initial Classification Hearing on

21   July 13, 2016.  The classification committee's notes reflect "a thorough review" of Mendoza's

22   case facts.  After noting several prior disciplinary infractions, including incidents involving

23   violence, and memorializing that it interviewed Mendoza, the committee concluded Mendoza

24   should be doubled-celled because of "no significant history of in cell victimization or predator

25   behavior towards a cellmate."  (ECF No. 88-3, Ex. C at p. 50)

26        Plaintiff does not dispute that the committee's decision in this regard is consistent with the

27   CDCR's "Double-Cell Housing Policy" (ECF No. 79-3, Goss Decl., Ex. B).  Under that policy,

28   only inmates with "a history of in-cell sexual abuse, assaultive behavior toward a cell partner,

significant in-cell violence against a cell partner, or verification of predatory behavior toward a cell or dormitory partner shall be reviewed and evaluated for single-cell status." *Id.*  Plaintiff does not seriously dispute that Mendoza met none of those disqualifying factors.  While Mendoza did sustain one rules violation for an in-cell battery, that occurred more than ten years before his attack on Muniz and involved only "minor injuries" (ECF No. 88-3, Ex. C. at pp. 2, 8).  *See Palmer v. Vasquez*, No. 1:13-cv-1400-AWI-JLT, 2015 WL 5021666, at *11 (E.D. Cal. Aug. 17, 2015) (summary judgment granted on claim against officer who approved Plaintiff for double-cell status where Plaintiff had not previously been victimized and housing decision was consistent with CDCR policy).

Defendant Goss attests that staff are trained to immediately remove an inmate from the area if they express safety or enemy concerns.  (ECF 79-2, Goss Decl. ¶ 8). Goss was aware that Mendoza received a rules violation for fighting, but noted that the incident occurred in the prison yard and not in a cell.  Goss also attests that inmates are given an opportunity to speak with each other to ensure that they are compatible prior to housing them together as cellmates, and that if an inmate informs staff that he is incompatible with his cellmate, they will not be housed together. *Id.* ¶¶ 8 – 9.

Plaintiff does not offer any facts to dispute that Goss's involvement in the decision to double-house Muniz with Mendoza was informed and consistent with CDCR policy.  Thus, there is no evidence that either Mendoza or Muniz had a problem with each other prior to Mendoza's attack on Muniz.  Instead, Plaintiff merely points out that Mendoza had a documented history of violence and that, as such, Goss had "more than a mere suspicion that Mendoza would attack again."  Opp. at 16 (citing *Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986)).  But in *Berg*, the plaintiff-inmate specifically told the correctional officer who moved him to less-secure housing that his life would be in danger if he were moved.  There is no such suggestion that Muniz ever reported to Goss that his life would be in danger if housed with Mendoza; to the contrary, Muniz never filed any complaint about Mendoza during their months' long housing together.  Just as in *Berg,* where claims against certain correctional officers were dismissed because the plaintiff-inmate did not report to them a specific fear of harm from an adversarial inmate, so too, here,

Goss had no reason to suspect a specific risk of harm between Muniz and Mendoza. *See Berg*, 794 F.2d at 460 (9th Cir. 1986) (affirming grant of summary judgment where plaintiff did not provide evidence demonstrating that defendants "had any reason to believe" that plaintiff would be attacked). *See also Shelton v. Reinke*, 2013 WL 1319630, at *9 (D. Idaho Mar. 28, 2013) ("Prison officials cannot be deliberately indifferent toward a purported substantial risk of harm when Plaintiff fails to inform them of the risk, despite having numerous opportunities to do so"), *aff'd*, 585 Fed.Appx. 359 (9th Cir. 2014) (unpublished).

Plaintiff also argues that Goss had more than a suspicion about the threat Mendoza presented to Muniz because they were drop outs from rival gangs. While Plaintiff argues that Mendoza may have been insincere about renouncing his gang-affiliations, and thus presumably, harbored gang-rival animosities towards Muniz (ECF No. 25, Second Amended Complaint, ¶¶ 33-35), she offers no facts to demonstrate that was, in fact, the case. Nothing shows that Mendoza associated with gang members while incarcerated or harbored malevolent intent towards current or former members of any rival STGs. Additionally, because there are no incident reports raised by Muniz when he was housed with Mendoza, there is no documentation that could have placed Goss on notice that there was any risk of serious harm, let alone a substantial risk of such harm. *E.g. Shelton*, 2013 WL 1319630, at *9 (finding no substantial risk of serious harm where plaintiff inmate lived with cellmate for four months prior to assault and never submitted a single complaint to prison officials). Even with all reasonable inferences granted in her favor, Plaintiff does not point to any facts that could generate a genuine factual dispute that should be resolved at trial. Plaintiff's allegations about Mendoza's gang affiliations do not rise above speculation.

In *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155 (9th Cir. 2013), the Ninth Circuit affirmed the district court's grant of summary judgment against an plaintiff-inmate who alleged prison officials were deliberately indifferent in housing him with a rival gang member who assaulted him. In affirming summary judgment, the Court found that a prison's policy of permitting members of different gangs to be housed together was not itself an Eighth Amendment violation. *Id.* at 1161. The Court reasoned plaintiff could not demonstrate deliberate indifference

1   largely because the two inmates lived peacefully together for an extended period of time before

2   the they were involved in the assault.  That the assaulting inmate only days earlier had been

3   involved in a violent incident with a different rival gang member was not enough to establish

4   deliberate indifference.

5        Here, Goss had even less reason to be aware of any significant risk of harm presented in

6   housing Muniz and Mendoza together than the correctional officers in *Labatad* because the two

7   inmates were not gang rivals, but instead, drop outs of rival gangs.  *Accord*, *Thompson v. Lee*, No.

8   1:07-cv-01299-LJO-GSA-PC, 2015 WL 769683, at *7-8 (E.D. Cal. Feb. 23, 2015) (summary

9   judgment granted where plaintiff-inmate did not communicate a specific fear of harm in relation

10  to his housing with a rival gang member); *Schrubb v. Simmons*, 2022 WL 3717254, at * 8-9 (N.D.

11  Cal. Aug. 29, 2022) (same).  Although Mendoza had been involved in previous violent events, to

12  wit, an instance of in-cell violence in 2007, and an instance of out-of-cell assault causing serious

13  bodily harm in 2017, the record does not show a pattern of behavior that would have put Goss on

14  notice that he posed a substantial risk of serious harm to Muniz.  (ECF No. 88-3, Ex. C. p. 6).  To

15  the contrary, there is no evidence from the moment Muniz was housed with Mendoza to the date

16  of the attach that Muniz raised any concern at all about his celling arrangement.

17       While it is undisputed that Mendoza was receiving the highest level of mental health care

18  offered at KVSP at the time of his attack on Muniz, Plaintiff identifies no facts linking Mendoza's

19  particular mental health situation with an inference that Mendoza accordingly could not

20  appropriately be double-celled with Muniz.  Indeed, the Initial Classification Hearing Committee

21  notes reflect that Mendoza had been clinically discharged from California Medical Facility and

22  stated he was in good health and ready to proceed – all of which leads to the reasonable inference

23  that Mendoza presented no mental health condition requiring single-cell housing.  (ECF No. 88-3,

24  Ex. C. p. 48).  In support of the argument that Mendoza's mental health is a material fact, Plaintiff

25  points to videos of Mendoza being interviewed by prison officials after the attack that she claims

26  show Goss erred in evaluating Mendoza's mental health in connection with his double-celling

27  decision.   But the record viewed as a whole does not support a reasonable inference that

28  Mendoza's mental health posed a serious risk to Muniz.  (ECF No. 88-3, Ex B).

1  In particular, Plaintiff points to Mendoza's "incomprehensible" speech pattern as evidence

2  of poor mental health, but his manner of speech had been documented in his prison file as

3  evidencing his capability to understand directions in plain, concise English and was able to

4  communicate with the housing committee. (ECF No. 88-3, Ex. C. p. 51).  Given that Plaintiff's

5  assertion is unsupported by the record, the allegation that Mendoza's mental health was severely

6  compromised amounts to little more than speculation.  In isolation, the video cannot support any

7  reasonable inference that Mendoza had severe mental defects – such an inference would require

8  expert opinion.[5]

9  Plaintiff also asserts Defendants' deliberate indifference is demonstrated by facts

10  discovered during the in-cell assault review conducted shortly after the attack.  Although it is

11  undisputed that the review determined that Mendoza's July 2016 initial housing review was

12  incomplete, there is no indication any of the Defendants were involved in that initial housing

13  review.  Moreover, Plaintiff fails to link the noted discrepancies – recording Mendoza's sentence

14  and release date inaccurately and failing to note Mendoza's reported aggression towards jail staff

15  – to any reasonable inference that the initial housing review decision to double-cell Mendoza

16  accordingly was improper.  Such discrepancies do not rise to the level of creating a disputed issue

17  of *material* fact because they are not facts that would affect the outcome of the suit.  *Anderson*,

18  477 U.S. at 248.

19  **b. Mendoza's SHU Confinement**

20  Plaintiff next contends that Goss acted with deliberate indifference when he authorized

21  Mendoza's early release from administrative segregation after being assessed a 19-month term to

22  be served in segregated housing for a rules infraction involving violence.

23  At the outset, Defendants urge the Court to disregard Plaintiff's argument regarding the

24  SHU because it "was not included in the complaint."  Reply at 2 (citing *inter alia Pickern v. Pier*

---

26  [5] Although not addressed by the parties in their summary judgment papers. Exhibit B is a video
27  recording in which investigators attempt to ascertain Mendoza's motivations behind his assault on Muniz.
According to Mendoza, Muniz was the initial aggressor over some disagreement in which Muniz
attempted to contact one of Mendoza's close friends. Mendoza allegedly struck Muniz and he stumbled
28  into the floor and into unconsciousness. Mendoza further stated that the incident was not gang related. *See*
Rule 56(c)(3).

*1 Imports (U.S.), Inc*., 457 F.3d 963, 968-69 (9th Cir. 2006) (holding that a plaintiff may not raise new allegations in opposition to a motion for summary judgment where the complaint does not give a defendant proper notice of those allegations).  Thus, under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a complaint must allege sufficient facts to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Summary judgment is not a "procedural second chance to flesh out inadequate proceedings." *Wasco Prods., Inc. v. Southwall Techs., Inc*., 435 F.3d 989, 992 (9th Cir. 2006). A party may not defeat a motion for summary judgment "by raising theories that lie outside the scope of their pleadings." *Wormuth v. Lammersville Union Sch. Dist*., 305 F. Supp 1108, 1119 (E.D. Cal. 2018).

In *Morgan v. Brown*, the plaintiff-inmate alleged in the operative complaint that a defendant correctional officer's deliberate indifference in leaving a gate unsecured resulted in another inmate gaining access to him and assaulting him.  In opposition to summary judgment, the plaintiff offered a different theory of deliberate indifference – that defendant's failure to ensure an escort officer was present for an inmate release constituted deliberate indifference.  No. 1:17-cv-00425-LJO-JLT, 2018 WL 4385842, at *3-4 (E.D. Cal. Sep. 14, 2018).  The Court found that the defendant was on sufficient notice of the general legal theory of deliberate indifference and, accordingly, permitted plaintiff to advance the variation of his argument in opposition to summary judgment because it did not subject Defendant "to the necessity of entirely reworking his defense."  *Id*. at *4.

For the same reasons articulated by the Court in *Morgan*, this Court will consider Plaintiff's SHU argument although not expressly set forth in the complaint.  Indeed, Defendants acknowledged Mendoza's placement in the SHU in their filings in support of summary judgment (*see* ECF No. 79-2, Goss Decl. ¶ 8), thus undermining any suggestion that permitting Plaintiff to advance the SHU theory would require Defendants to rework their defense.  *Morgan*, 2018 WL 4385842, *4.

Following Mendoza's "Battery Causing Serious Injury" incident on February 5, 2017, the

ICC assessed a 19-month SHU term, with a Minimum Eligible Release Date (MERD) of November 16, 2017.  (ECF No. 94-2, Custer Decl. ¶ 5).  On May 11, 2017, Defendant Goss chaired a Classification Committee hearing which found that Mendoza's term in the SHU was no longer warranted.  Although the ICC early terminated Mendoza's previously assessed 19-month SHU term, it is undisputed that the Committee arrived at that conclusion because Mendoza, while double-celled in administrative segregation for approximately three months, remained discipline free and engaged in positive programming.  (ECF No. 93-1, Custer Depo. pp. 55-56).  The Committee's imposition of a 19-month SHU term in Mendoza's case was not fixed and irrevocable, but rather, a "potential penalty" which commonly is suspended where the inmate (like Mendoza here) committed no other SHU-able offenses within the past year.  (ECF No. 94-2, Custer Decl. ¶¶ 5-6; ECF No. 88-3, Ex. C pp. 50-51).  The Committee further noted that Mendoza possessed no mental health factors that would cause him to experience difficulty in understanding the prison disciplinary process, and there was no finding that his mental health was a contributing cause of the February 5, 2017 incident. The Committee noted that Mendoza had no significant history of in-cell predatory/assaultive behavior towards cellmates, while mentioning his prior instance of in-cell violence on September 2, 2007, as an isolated incident with no further acts of violence. *Id*.

In short, Goss did not disregard any facts and circumstances suggesting that Mendoza's release from a SHU term would create a substantial risk of serious harm to Muniz.

### 2.  Plaintiff's California Government Code § 845.6 Claim Against Officers Diaz-Albarran and Calderon

Plaintiff alleges that Officers Diaz-Albarran and Calderon, violated Cal. Govt. Code §§ 844.6 and 845.6 for failing their duty to monitor, check and respond to persons under their custody, supervision and control. "In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 606 (9th Cir. 2019) (quoting *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006)).

13

1    In opposing summary judgment, Plaintiff's sole mention of and allegation against

2    Defendants Diaz-Albarran and Calderon relates to Plaintiff's assertion that they violated the

3    Eighth Amendment through deliberate indifference.  Plaintiff's theory is that Diaz-Albarran and

4    Calderon were on-duty correctional officers at the time of Mendoza's attack against Muniz, and

5    as such "should have heard and responded to" the attack given Muniz's alleged heavy breathing

6    and audible distress.  Opp. 8-10, 18.  Plaintiff wholly fails to address Defendants' showing that

7    this conduct fails to raise a disputed issue of material fact with respect to the § 845.6 claim.

8    Nevertheless, the Court will incorporate the substance of Plaintiff's deliberate indifference claims

9    against Diaz-Albarran and Calderon and consider below whether they satisfy the elements of §

10    845.6.

11    Under the first *Jett* prong, Plaintiff points to a video that arguably shows Muniz loudly

12    hyperventilating while being treated by medical staff. (ECF No. 88-3, Ex. A).[6]  The video has no

13    timestamp and it is unknown how proximate in time it was taken after Officers Calderon and

14    Diaz-Albarran found Muniz under his cell bunk.  However, there is reason to believe the video

15    was not contemporaneous with the officers' initial discovery of Muniz because Diaz-Albarran

16    attested during his deposition that when he found Muniz at around 6:32 a.m., he was

17    unresponsive or breathing normally.  (ECF No. 93-4, Diaz-Albarran Depo. p. 48).  Aside from

18    Plaintiff's speculation that Muniz must have been exhibiting audible signs of distress, there is

19    nothing in the record either by the way of prisoner affidavits or depositions that Muniz was, in

20    fact, in a hyperventilating state at the time that he was discovered.  Accordingly, even with all

21    reasonable inferences granted in Plaintiff's favor, it does not follow that because Muniz was

22    breathing loudly while attended by medical staff, that he also was in the same state when he was

23    discovered by the officers (thereby, presumably, giving them reason to foreknow of an immediate

24    need of medical attention).

25    Likewise, Plaintiff offers no evidence that the Officers failed the second and third prongs

26

27    _____

      [6] The individual depicted in the video is not outright identified as Muniz but given that his facial injuries were consistent with what was documented on the record, and the man had a "SSK" tattoo across

28    his chest, which presumably stands for "South Side Kings", a STG that Muniz used to associate himself with, there is a reasonable inference that the man in the video is indeed Muniz.

1    outlined by *Jett*.  Thus, no information contradicts Calderon's deposition testimony that he

2    immediately asked the control booth to open the cell door and called for responding staff upon

3    discovering Muniz.  (ECF No. 93-3, Ex. G, Calderon Depo. pp. 44-45).

4        Because Plaintiff fails to present any disputed issues of material fact in support of her §

5    845.6 claims against Diaz-Albarran and Calderon, summary judgment is appropriate.

### 3. Plaintiff's Loss of Familial Relations Claims

7        Parents have a Fourteenth Amendment liberty interest in the companionship and society

8    of their children. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  However, only official

9    conduct that "shocks the conscience" is cognizable as a due process violation.  *County of*

10   *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). (citations omitted).  The key inquiry is "whether

11   the behavior of the government official is so egregious, so outrageous, that it may fairly be said to

12   shock the contemporary conscience." *Id*. at 847 n. 8.  Typically, the type of conduct which is

13   most likely to rise to the "conscience-shocking level" is "conduct intended to injure in some way

14   unjustifiable by any governmental interest." *Id.* at 849.  Nevertheless, conduct which was not

15   intentional, but rather deliberately indifferent, may rise to the conscience-shocking level in some

16   instances. *Id*. at 849-50.

17       As there are no findings of deliberate indifference in the underlying failure to protect

18   claims, Plaintiff's familial relation claims must also fail. *See Toguchi*, 391 F.3d at 1061 ("because

19   a due process claim predicated upon the violation of a parent's liberty interest in the

20   companionship of his child requires a showing of more than negligence, entry of summary

21   judgment" affirmed where deliberate indifference claims failed); *Cotta v. County of Kings*, 79 F.

22   Supp.2d 1148, 1180 (E.D. Cal. 2015) (same).

### 4. Plaintiff's Wrongful Death Claims

24       Plaintiff alleges Defendants breached their duty owed to Muniz, which includes a duty to

25   provide "safe and appropriate prison custody," obey court orders, summons necessary and

26   appropriate care, refrain from abusing their authority, and refrain from violating his United States

27   and California constitutional rights.  (ECF No. 25 ¶ 116).  Plaintiff alleges she suffered injuries

28   and damages on account of Defendants' breach of the above outlined duties.  *Id*. at ¶ 119.

15

1   "The elements of the cause of action for wrongful death are the tort (negligence or other

2   wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by

3   the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1263 (2002) (emphasis

4   omitted).  In order to support a finding of negligence, the plaintiff must show that a defendant had

5   a duty of care, he breached that duty, and that the breach was the proximate or legal cause of the

6   injury.  *Cotta*, 79 F. Supp. 3d at 1183.  In *Cotta*, the court found that in a situation where prison

7   officials had no reason to be aware of a foreseeable risk of harm, there was no breach of duty. *Id*

8   As discussed above, there is no evidence that Defendants had any reason to believe that

9   Mendoza posed a risk to Muniz's safety. There was no indication of any adversity between the

10   two prior to Muniz's death. In other words, the undisputed facts demonstrate that Mendoza did

11   not pose a foreseeable risk of harm to Muniz of which Defendants were aware (or should have

12   been aware).  Nor does Plaintiff offer any disputed issues of material fact as to Defendants'

13   breach of duties to summons necessary and appropriate care upon discovering Muniz, and to

14   refrain from abusing their authority and violating inmates' constitutional rights.  Accordingly, the

15   undisputed facts demonstrate that Defendants did not breach their duty of care to protect Muniz

16   from any foreseeable harm.

## IV.  RECOMMENDATION

18   Based on the foregoing, it is **HEREBY RECOMMENDED** that Defendants motion for

19   summary judgment be **GRANTED** in whole.

20   These Findings and Recommendation will be submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(l).  Within 30 days after

22   being served with these Findings and Recommendation, the parties may file written objections

23   with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

24   and Recommendation."  The parties are advised that failure to file objections within the specified

25   / / /

26   / / /

27   / / /

28

16

time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 13, 2023**   _____

UNITED STATES MAGISTRATE JUDGE